

_____ FILED _____ ENTERED
_____ LOGGED _____ RECEIVED

OCT 22 2018

AT BALTIMORE
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF ) <br> INFORMATION ASSOCIATED WITH ) <br> ) <br> ENVELOPE ADDRESSED TO AMANDA ) <br> MERRILL at ) <br> 1848 Circle Road Towson Maryland 21204, ) <br> return address 401 E. Madison St ) <br> Baltimore, Maryland 21202 ) <br> 1335278 | Case No. <br><br> **UNDER SEAL** <br><br> **18-2765-ADC** |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT

I, Sarah C. Derrane, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION

I make this affidavit in support of an application for a search warrant for written communication in the form of a letter contained in an envelope sent by KEVIN B. MERRILL from his place of confinement, at the Chesapeake Detention Facility to his wife AMANDA MERRILL, 1848 Circle Road Towson Maryland 21204, which envelope and letter is currently being held by the Postal Inspector at Loch Raven Branch, 808 Glen Eagles Court, Baltimore MD 21286.

The communication to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant to require the UNITED STATES POSTAL INSPECTION SERVICE to disclose to the government copies of the contents of the envelope which are believed to be evidence and instrumentalities of the crime of obstruction of a court order in violation of 18 U.S.C. § 1509.

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been employed with the FBI since January 2018. From September 2018 until the present, I have been assigned to investigate violations of federal law involving a range of white-collar criminal violations. I have received training on white collar crimes and asset forfeiture. I have also worked and consulted with FBI Paralegal Specialists who have expertise in asset forfeiture, liens and restraining orders.

2. Through my training and experience, I have become familiar with the methods and techniques used by criminals to commit economic crimes, such as wire fraud and identity theft, and how those criminals conceal and store information derived from such criminal activity.

3. This affidavit is intended to show merely there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that attempted violations of restraining orders issued by this Court have been and are being committed by **KEVIN MERRILL ("KEVIN") and AMANDA MERRILL ("AMANDA")** in violation of 18 U.S.C. Section 1509 (obstruction of court orders). There is also probable cause to search the written communications and other information described in Attachment A with regard to the letter sent from KEVIN to AMANDA for evidence and instrumentalities of this crime.

## STATEMENT OF PROBABLE CAUSE

4. On September 11, 2018, KEVIN was indicted in the United States District Court for the District of Maryland for violations of Conspiracy to Commit Wire Fraud (18 U.S.C. § 1349), Wire Fraud (18 U.S.C. § 1343), Identity Theft (18 U.S.C. § 1028A), Money Laundering Conspiracy (18 U.S.C. § 1956(h)), Financial Transactions Over $10,000 in Criminally Derive Property (18 U.S.C. § 1957(a)). *United States v. Kevin B. Merrill, et al*, Criminal No. RDB-18-0465.

5. On September 18, 2018, KEVIN was arrested pursuant to a federal arrest warrant. On September 20, 2018, US Magistrate Judge A. David Copperthite ordered him to be detained due to risk of flight.

6. Through review of the indictment and participation in a search and seizure warrant executed on September 18, 2018 at KEVIN's residence at 1848 Circle Road, Towson, Maryland, your affiant became aware of the extravagant lifestyle that KEVIN had been living prior to his arrest and detention. This included but is not limited to purchases of: at least twenty high-end luxury vehicles whose values total in the millions of dollars, millions of dollars directed toward real estate purchases and renovations at six locations and purchases of expensive designer watches, jewelry, clothing, accessories

2



and collectibles. KEVIN also purchased an expensive boat and a share in a private jet, traveled extensively in the United States and internationally, and frequented casinos.

7. During the execution of the search and seizure warrant at 1848 Circle Road, Towson, Maryland, numerous valuable items were seized including eight high-end luxury cars, expensive designer watches, and jewelry.

8. AMANDA is currently residing at 1848 Circle Road, Towson, Maryland. She is responsible for all of the real estate properties that named as forfeitable in the Indictment by the government and received the restraining order issued in the criminal case. ECF 8. At the conclusion of the search and seizure warrant at 1848 Circle Road, Towson, Maryland, FBI Agents provided AMANDA with a receipt of items taken and asked her to disclose any information that would assist Agents in locating items not collected at the residence. AMANDA was also counseled by FBI Agents to be completely truthful and forthcoming with her answers and warned against attempting to hide or move assets.

9. On or about September 13, 2018, the Securities and Exchange Commission brought a civil enforcement action against Kevin Merrill and others in United States District Court for the District of Maryland. Civil No. 18-02844 (RDB).

10. The district court has issued restraining orders requiring KEVIN and others not to dispose of any property they own; the orders have been extended and turned into a preliminary injunction. ECF 3-4, 9, 22. The Orders freeze all funds and assets owned by KEVIN and the entities he controls including, Global Credit Recovery, LLC, Delmarva Capital, LLC, Rhino Capital Holdings, LLC, Rhino Capital Group, LLC, and have been continuously in effect since September 18, 2018, when they were unsealed.

11. On or about September 20, 2018, the Securities and Exchange Commission (SEC) mailed via certified mail to AMANDA, and emailed to her counsel Steven H. Levin, the restraining order, signed by Judge Richard D. Bennett, District of Maryland, on property and assets held by KEVIN and AMANDA.

12. The Preliminary Injunction Order Freezing Assets and Granting Other Relief entered by the Court on October 4, 2018, stated: "It is further ordered that, pending further order of this Court, the asset freeze imposed by Section IV of the Temporary Restraining Order Freezing Assets and Granting

3



Other Emergency Relief entered by the Court of September 13, 2018... shall continue in full force and effect, and the assets of Defendants (KEVIN B. MERRILL, et al.) and the assets of the entities Defendants own or control, including any assets acquired after the date of this Order, shall remain frozen.

*Jail Calls*

13. Beginning on September 20, 2018, while incarcerated at The Chesapeake Detention Facility, Baltimore, Maryland ("CDF"), KEVIN began making phone calls. All calls placed by inmates at this facility are recorded and monitored; all parties to a call are advised of the recording and monitoring at the beginning of each call. Your affiant began reviewing all calls placed by KEVIN to outside parties for the purpose of identifying criminal activity, possible collusion to commit criminal activity, and attempts to gain or hide assets derived from criminal activity.

14. Many calls placed by KEVIN were to the cell phone number 443-567-9828, which your affiant knows based on database searches and phone calls belongs to AMANDA. Your affiant was present while AMANDA spoke with FBI Agents on September 18, 2018, after the search and seizure warrant at her residence, and also spoke directly with her on September 21, 2018 while at her residence. Based on these meetings your affiant knows the sound of AMANDA's voice and is able to identify it as the one heard on the jail calls associated with cell phone number, 443-567-9828. During these calls KEVIN and AMANDA also made reference to their home, their marriage, and their children, giving your affiant further confirmation that the voice associated with cell phone number, 443-567-9828, called by KEVIN can be attributed to AMANDA.

15. During your affiant's review of these calls certain conversations relating to assets and the restraining order stood out as possibly needing further review. While discussing these matters, KEVIN and AMANDA would become vague and used coded language that indicates they understood each other, but a third party to their conversation would not know their exact meaning.

16. Frequent calls were also placed to an individual only known to your affiant as "ANDRE", at the cell phone number 703-989-7080. This number can be verified as belonging to "ANDRE" as AMANDA provided it to KEVIN.

17. Your affiant knows that on September 22, 2018, AMANDA met with KEVIN at CDF. Based on your affiant's review of phone calls between AMANDA and KEVIN, your affiant knows that KEVIN intended to provide AMANDA with written instructions on actions he wished her to take. KEVIN had to provide her with written instructions because he could not discuss the matter over the phone due to the conversations being recorded and monitored. In a jail call KEVIN placed to ANDRE on September 22, 2018, ANDRE informed KEVIN that AMANDA was emotional and was unsure that she would be able to complete what KEVIN asked her to do during their meeting earlier that day. AMANDA believed that what KEVIN was instructing her to accomplish would jeopardize her and their children. KEVIN continued to say that if AMANDA did not feel comfortable with the instructions to disregard them, but there were "things" she had to do now that were very important. AMANDA told KEVIN that "*I can't do anything to jeopardize me leaving them* (the children)," and *"I have to watch out for me and the kids."* AMANDA was clearly upset while discussing the instructions KEVIN had provided her.

18. On September 24, 2018, KEVIN called AMANDA, and the following exchange took place;

KEVIN: *"The other one out in Virginia, do we have any indication as to where?"*

AMANDA: *"No, nothing."*

KEVIN: *"you're going to have to call New York and ask, we never got confirmation of delivery, we need to know where it is, it's valuable and it's paid for."*

AMANDA: *"at least I can put it in the house until something happens."*

Your affiant knows from research in the investigation of KEVIN that he often made purchases at Dominion Jewelers in Fairfax, Virginia. During the search and seizure warrant executed on September 18, 2018 at 1848 Circle Road, Towson, Maryland AMANDA told Agents that her engagement ring, which was not found during the search, was brought to Dominion Jewelers a couple months before. AMANDA was advised to be forthcoming and truthful with Agents, and she repeated that she had been. Upon review of information received from Dominion Jewelers, it was discovered that the ring mentioned in the seizure warrant had been exchanged in August of 2018 for a ring valued at approximately $650,000. Information provided by Dominion Jewelers included a photograph that appeared to be a screenshot from an electronic

5

device depicting AMANDA wearing the ring valued at $650,000. Your affiant believes this shows AMANDA's knowledge of what happened to the ring that was to be seized by the government, and shows that AMANDA was not truthful in her statements to the FBI.

19. KEVIN and AMANDA were aware their conversations were recorded as they both mentioned at times that certain topics cannot be freely discussed on the line. Your affiant believes that KEVIN would be more forthcoming and open in written communications, like a letter, to AMANDA. Supporting this is a call placed by KEVIN to AMANDA on September 25, 2018 KEVIN stated

*"I'm going to write you a letter, what I found out is I can send you mail, I can write you a letter and they seal it in an envelope and by law they cannot open it, they will not open the outgoing they will only open incoming, they only open incoming to make sure there's nothing in it like a nail file... they're not opening to read mail, they're opening to make sure no one is mailing you something that can harm someone. Ken was telling me the best way to instruct and talk that way so I'm going to try and borrow an envelope from someone. So I'll try and put some stuff down that way."*

Your affiant learned through the conversations that "KEN" is KEVIN's cellmate at CDF and often gives him advice about the CDF and the legal system.

20. Prior to this statement KEVIN had asked AMANDA if any mail from BENNETT LAW FIRM had been received at the house and she needed to be on the lookout for it. KEVIN said he could not say anything further for fear of putting the attorney in a bad spot. Further on in the conversation, AMANDA and KEVIN began to discuss what your affiant believes to be their property in 27776 Sharp Road, Easton, Maryland. AMANDA stated that she must return to the house to collect COMCAST boxes that were no longer needed. KEVIN mentioned that they had given permission for a friend to go there and collect them so she did not have to make the trip. AMANDA was adamant that it be her, stating that she should go to make sure there is nothing else that should be returned, she began to ask *"or is there nothing?"* and KEVIN interjects with *"Yeah, yeah"* indicating AMANDA needed to be the one to check on what is left in the house. KEVIN then asked AMANDA if her attorney was thinking the same thing about that

6

property, *that "there's nothing there,"* AMANDA responded *"the most they're going to get out of there is a tractor"* but then followed up with *"is there, um..."* after a long pause KEVIN replied *"not sure."* Your affiant believes based upon this exchange, that AMANDA being adamant that she needed to return to the house and the vague response by KEVIN, that there may be additional assets that AMANDA is trying to gain access to and conceal from the government.

21. On September 29, 2018, in a call placed to AMANDA, KEVIN again vaguely describes an item that needs to be found.

> KEVIN: *"back to the other one out there, someone has to confirm if in fact he received or did not or denied, declined or whatever, that's a very important piece. That's the thing that's upsetting to me, if he did receive that's really important, if he didn't that's even more important."*
>
> AMANDA responds that it can be tracked down because there's records of it being bought.
>
> KEVIN: *"I know but like I said all along everything is going to matter at the end in values and things, just like he said to you about trading, things like that matter."*
>
> AMANDA: *"Well I'm hoping."*
>
> KEVIN: *"Go ahead, what?"*
>
> AMANDA: *"Nothing, it's not important."*
>
> KEVIN: *"Yeah be careful."*

Your affiant believes that discussion by KEVIN and AMANDA is about an asset that AMANDA and KEVIN are attempting to locate, acquire and conceal. KEVIN had previously stated that in a letter he does not have to watch what he says, therefore, items such as this "very important piece" can be discussed freely. Your affiant believes that information about an asset or assets is contained in the **TARGET LETTER.**

22. In the same conversation on September 29, 2018, KEVIN mentioned there was some "LV" in his closet that AMANDA *"should just get rid of,"* further stating *"if they didn't take it it's ours feel free to"* followed by a long pause. AMANDA did not believe it would *"do very much though,"* KEVIN told her *"it's a few thousand here and there, it's something, stuff's not junk,"* and *"whatever you have to do, anything of mine, I don't care."* Your affiant knows based on reviews of financial records and of the search

7



of 1848 Circle Road, Towson, Maryland, that KEVIN purchased large amounts of Louis Vuitton luggage and handbags and that the "LV" mentioned in the phone call between KEVIN and AMANDA was referencing the Louis Vuitton items currently in AMANDA's possession. Your affiant believes that KEVIN is instructing AMANDA to violate the SEC order which specifically restrains the sale of any item of value belonging to KEVIN.

23. On September 30, 2018, KEVIN placed a call to AMANDA. In that conversation AMANDA expressed her wish that they had money hiding away somewhere, to which KEVIN agreed saying he wished he had known about his arrest and followed that up with "*but um yeah, we'll talk about that another time.*" Your affiant believes that this statement from KEVIN indicates that there are assets that could be made available to AMANDA.

24. Further on in the conversation on September 30, 2018, KEVIN inquired as to whether "that guy from out there...at the villas" reached out to AMANDA. AMANDA replied that he had not, and KEVIN then said "well so, got some thought there, so I'll write it to you ultimately, can't say it." AMANDA replied "Is it what I think it might be." KEVIN responded "In a good way, yes." Your affiant believes that this is an indication that KEVIN and AMANDA have assets hidden and are knowingly attempting to conceal them from the government.

25. A subject often discussed between KEVIN and AMANDA is a man named "ABE," who KEVIN and AMANDA sometimes referred to as "The Persian." Based on the conversations between AMANDA and KEVIN, ABE currently has two vehicles that KEVIN dropped off at ABE's shop for work. According to the conversations, AMANDA had repeatedly requested that ABE return the vehicles to her, which ABE refused to do because there is a restraining order on the vehicles. KEVIN and AMANDA both believed that ABE was trying to keep the vehicles to sell himself, despite the SEC order served on AMANDA. Your affiant knows that ABE has retained counsel in this matter and is holding the vehicles, without the intention of selling them.

26. On September 26, 2018, KEVIN told AMANDA he was informed that the two vehicles did not have restraining orders, and they were not on any list, therefore they were the property of KEVIN and AMANDA.

27. In a conversation on October 1, 2018, KEVIN told his friend and tow truck operator "MIKEY" that the "918" is in the garage and the "'Aperta' are there to ultimately move." Your affiant believes the "918" is a Porsche 918 Spyder currently present at 1848 Circle Road, Towson, Maryland and under the physical control of AMANDA.

28. On September 28, 2018, KEVIN called AMANDA and told her about the letter he intended to write, stating *"the only way I can really say anything to you is to write it, so I'm going to write it, and I hope that what I'm being told that it isn't opened is true."* Your affiant believes that what KEVIN is referring to writing AMANDA is related to assets and not just personal matters, as they regularly discuss their children, marriage and current mental states over the recorded calls. On September 30, 2018, KEVIN told AMANDA that he wrote her a long letter, the **TARGET LETTER**. Your affiant believes that the contents of this letter will include instructions to AMANDA on the location of assets known and unknown to the government as well as instructions on how to dispose of those assets for monetary gain in violation of the orders entered in Judge Richard D. Bennett, District of Maryland.

## CONCLUSION

29. Based on the foregoing, I request the Court issue the search warrant for the **Target Letter**. Your affiant believes based on statements made by KEVIN about his knowledge of phone calls being recorded and monitored that KEVIN intends to use the **TARGET LETTER** to freely communicate topics such as concealing the location of assets. Based upon the immense wealth, extravagant lifestyle, extensive travel, and taste for expensive property, your affiant believes there probable cause to believe that there are assets located outside of properties searched by the FBI that AMANDA and KEVIN are knowingly and intentionally concealing from the government. Also, based upon statements heard during calls placed from KEVIN to AMANDA, your affiant believes KEVIN and AMANDA are attempting to locate and dispose of assets they believe the FBI and SEC does not or will not know about despite a restraining order.

9

## REQUEST FOR SEALING

30. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. This document discusses recorded phone conversations placed from a Maryland Correctional Facility and while the participants are aware of the recording, as they are reminded at the beginning of every call placed, your affiant believes that it is in the best interest of this investigation to not make the participants aware that their calls are being listened to. Your affiant has become aware from listening to the conversations that participants discuss at length many topics and while some have veiled meaning it has been helpful in determining information such as described in this Affidavit, as well as contacts and business information for KEVIN. Accordingly, there is good cause to seal these documents because their premature disclosure may cause participants to discontinue conversations and the investigation to lose valuable insight and information.

SARAH C. DERRANE
SPECIAL AGENT, FBI

Subscribed and sworn to before me on October 5, 2018.

HONORABLE A. David Copperthite
UNITED STATES MAGISTRATE JUDGE



18-2765-ADC

## ATTACHMENT A

### Property to Be Searched

This warrant applies to the written communication contained within an envelope sent from KEVIN MERRILL addressed to AMANDA MERRILL 1848 Circle Road Towson Maryland 21204, return address 401 E. Madison St Baltimore Maryland 21202 1335278, that is stored with the Postal Inspector Manager located at Loch Raven Branch, 808 Glen Eagles Court, Baltimore MD 21286.

CDF
OUTGOING MAIL
OCT 01 2018
MAIL ROOM

## ATTACHMENT B

### Particular Things to be Seized

The letter from Kevin Merrill to Amanda Merrill for evidence of obstruction of justice, concealment of assets, or other evidence of violations of 18 U.S.C. 1509.